**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
aml@lagomarsinolaw.com
cory@lagomarsinolaw.com
*Attorneys for Plaintiff Shehaly Salgado-Rodriguez*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SHEHALY SALGADO-RODRIGUEZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ARROW ELECTRONICS, INC., a New York corporation;<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT AND**<br>**JURY DEMAND** |

Plaintiff SHEHALY SALGADO-RODRIGUEZ, by and through her attorneys, ANDRE M. LAGOMARSINO, ESQ. and CORY M. FORD, ESQ. of LAGOMARSINO LAW, hereby submits the following *Complaint and Jury Demand*.

## JURISDICTION AND VENUE

1. This civil action is brought to remedy violations of Plaintiff's rights under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the corresponding Nevada Revised Statute ("NRS") § 613.310 *et seq.* for discrimination, retaliation, and failure to accommodate based on her disability.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

3. Venue is proper in this District, pursuant to 28 U.S.C. § 1391 because allegations relative to the proceeding arose in this district and the parties reside and/or do business in this district.

## PARTIES TO THE ACTION

4. At all times relevant herein, Plaintiff SHEHALY SALGADO-RODRIGUEZ ("Plaintiff") was, and is, a resident of Lyon County, Nevada and subject to the unlawful actions of Defendant described herein.

5. At all times relevant herein, Defendant Arrow Electronics, Inc. was a New York corporation doing business in Washoe County, Nevada.

6. At all times relevant herein, Plaintiff had a "disability" as defined by the ADA and Nevada Revised Statute NRS 613.310.

7. At all times relevant herein, Plaintiff was employed by Defendant.

8. Defendant was Plaintiff's "employer" for purposes of the claims set forth herein.

9. At all relevant times herein, Defendant was a covered entity pursuant to 42 U.S.C. § 12111(2).

10. Upon information and belief, Defendant employed more than 500 employees during all of the relevant time periods, and therefore is, and has been, an "employer" as defined by the ADA during all of the relevant time period

## PROCEDURAL REQUIREMENTS

11. On September 9, 2021, Plaintiff timely filed a Charge of Discrimination with the EEOC. On September 14, 2021, Plaintiff timely filed an Amended Charge of Discrimination with the EEOC. The charges are attached hereto as Exhibit 1.

12. Plaintiff's Notice of Right to Sue was issued on December 9, 2021. Plaintiff has exhausted all administrative remedies in connection with this action. The Notice of Right to Sue is attached hereto as Exhibit 2.

13. Plaintiff has fully complied with all prerequisites for jurisdiction in this Court to bring claims under the ADA and related Nevada Revised Statutes § 613.310 *et. seq*. This Complaint and Jury Demand is being filed within ninety (90) days of Plaintiff's receipt of Notice of Right Sue.

. . . .

. . . .

. . . .

**GENERAL ALLEGATIONS**

14. Plaintiff incorporates and realleges Paragraphs 1 through 13 of this Complaint as though fully set forth herein.

15. Defendant Arrow Electronics, Inc. is a Fortune 500 company that sells technology products, services, and solutions all over the world.

16. Plaintiff began working for Defendant Arrow Electronics, Inc. on or about June 7, 2021, as a Senior Human Resources Associate at its warehouse located at 665 Maestro Drive, Reno, NV 89511 ("the warehouse"). Plaintiff's duties in that role included meeting with employees at the warehouse to address any concerns that they brought forth to Human Resources.

17. Plaintiff's immediate supervisor was Stephanie Clark, who worked out of Defendant's location in Colorado.

18. Plaintiff also worked with the Human Resources Manager, Romy Kuklin, on site at the warehouse.

19. Additionally, Plaintiff worked with the Senior Human Resources Director, Linda Cherry, and Human Resources Director, Missy Fuller, who oversaw other Human Resources staff and were based out of Defendant's other locations in Colorado.

20. Since birth, Plaintiff has had a severe shellfish allergy that can result in anaphylaxis simply by being in or near an area where shellfish is being prepared, cooked, or consumed.

21. When Plaintiff was hired, Plaintiff made Defendant aware her severe shellfish allergy by informing Stephanie Clark and Romy Kuklin. Despite this, Plaintiff's office was placed in a space where her door was connected to the cafeteria of the warehouse where shellfish was routinely cooked, prepared and eaten.

22. As a result, Plaintiff was forced to make efforts to keep herself safe at work by avoiding any potential exposure to shellfish. These efforts included keeping the door that connected her office space to the cafeteria closed and avoiding the cafeteria area. *See* Exhibit 3 (Photos).

23. On or about June 29, 2021, Plaintiff contacted her immediate supervisor, Stephanie Clark, via a work chat application, and informed Stephanie that she was ill and suspected Covid.

24. Stephanie Clark responded "If you don't feel good, I think it is best if you take today to rest up! Don't worry about missing work, I would rather you feel 100% and take the day to rest then come into work not feeling great." Plaintiff then informed Stephanie Clark that she would be getting a Covid test the following day to ensure compliance with company Covid guidelines.

25. Plaintiff again missed work on or about June 30, 2021 and asked Stephanie Clark to if anything was required of her. She was told nothing was needed. She also informed Stephanie Clark that she was Covid Negative and would return to work the next day on or about July 1, 2021.

26. On or about July 14, 2021, Plaintiff suffered a reaction from a shellfish exposure at work which required her to take medication to help alleviate her reaction. Because of the aftereffects of her reaction and the medication, Plaintiff contacted Stephanie Clark and informed her that she needed to go home for the day.

27. Despite being aware of Plaintiff's allergy and suffering from the aftereffects of a reaction, before allowing Plaintiff to go home, Stephanie Clark queried Plaintiff about other medication options she could take for her allergy. Plaintiff responded that her exposure to shellfish was hard to control because she was placed so close to the cafeteria, and she would have to consult with her doctor about alternative medications and options to take for potential future exposures at work.

28. Sometime between Plaintiff's July 14, 2021 reaction and July 26, 2021, Plaintiff again spoke with Stephanie Clark to discuss her concerns about exposure to shellfish while at work. During their discussion Stephanie Clark informed Plaintiff that a location in Colorado had banned peanuts from an entire floor for an employee due to the employee's nut allergy. Stephanie Clark suggested Plaintiff apply for ADA accommodations and request a similar ban for her shellfish allergy at the warehouse.

29. On or about July 26, 2021, Plaintiff requested the necessary information to submit a formal ADA accommodation request for her severe shellfish allergy.

30. On or about July 27, 2021, Plaintiff came into work and was informed that she was to report to a meeting with Stephanie Clark, Romy Kuklin, and Missy Fuller. During that meeting, Plaintiff received an official Corrective Action Notice for attendance and "failure to fulfill" her

responsibilities. Despite being aware of Plaintiff's Covid scare and severe allergy, the reasons for the Corrective Action Notice were for Plaintiff's absences on June 29, 2021 and June 30, 2021 as detailed above, her July 14th, 2021 absence where she left work early after suffering a reaction as a result of being exposed to shellfish, keeping the door connecting her office to the cafeteria closed, and not assisting employees at HR kiosks located in the cafeteria.

31. Additionally, the Corrective Action Notice required Plaintiff to now keep the door connecting her office to the cafeteria open, walk the cafeteria floor during lunch, and enter the cafeteria to assist employees at the HR kiosks, all of which significantly increased her chances of being exposed to shellfish and suffering a reaction.

32. That same day, Plaintiff received instructions on obtaining ADA accommodations for her allergy in an email from Stephanie Clark. Those instructions required Plaintiff to complete a request herself, have her medical provider complete a form, and submit those to the Arrow Human Resource manager, Linda Cherry.

33. Plaintiff met with her physician to complete the required form on or about July 30, 2021.

34. On or about August 2, 2021, Plaintiff received a group email from Stephanie Clark informing its recipients of a remote HR position. Stephanie Clark asked the email recipients to share this position with their networks.

35. On or about August 3, 2021, Plaintiff received what was to be the first of multiple pretextual and retaliatory emails regarding alleged performance deficiencies from Stephanie Clark, with Romy Kuklin copied on the email. Stephanie Clark attempted to document that Plaintiff had "forgotten" to send her required daily update, despite being fully aware that Plaintiff had been experiencing connectivity issues with her computer that day, enough so that Stephanie Clark and Plaintiff had had to cut their virtual meeting short that same day. Plaintiff informed Stephanie Clark that she had in fact "sent" the email, but due to the continuing connectivity issues it never left her outbox until she manually released it the following day. Stephanie Clark proceeded to instruct Plaintiff to inform her or Romy Kuklin when she was unable to send an email, despite knowing that Plaintiff already had an established pattern of doing so.

36. That same day, Plaintiff submitted her completed request for ADA accommodations to Linda Cherry, including the required documentation from her physician. Plaintiff's physician stated that Plaintiff's allergy affected her ability to breathe, and clearly outlined that Plaintiff must not be exposed to any shellfish whatsoever, as even the mere cooking or consumption of shellfish in Plaintiff's proximity would trigger a reaction.

37. In her ADA accommodations request, Plaintiff clearly stated she could not enter the cafeteria, open her office door near the cafeteria, or walk the floor during lunch (which was between 11am and 1pm). Knowing that Arrow Electronics, Inc. allowed HR employees to work remotely based on the August 2, 2021, email from Stephanie Clark, Plaintiff also requested to transition to a remote position until Defendant Arrow Electronics, Inc. was able to make these accommodations and/or had time to consider instituting a policy banning shellfish on the premises of the warehouse similar to what Arrow had done in Colorado when it banned peanuts from an entire floor due to an employee's allergy.

38. On or about August 4, 2021, Plaintiff emailed Linda Cherry and Stephanie Clark to confirm receipt of her ADA accommodations request and asked for guidance on how to proceed in the meantime as her current work arrangements were jeopardizing her health and safety by putting her at risk of being exposed to shellfish.

39. After not receiving a response from Linda Cherry or Stephanie Clark, Plaintiff then sent out a second follow-up email on or about August 5, 2021, reiterating that her current work arrangements still threatened her health and safety by putting her at risk of being exposed to shellfish. Linda Cherry confirmed receipt of ADA accommodation request later that day.

40. On or about August 6, 2021, Plaintiff attended a meeting with Linda Cherry, Stephanie Clark, Romy Kuklin, and Missy Fuller regarding her ADA accommodations request.

41. At the meeting, Linda Cherry outlined that the following accommodations were to be provided: (1) Plaintiff was to be moved out of her private office space and placed in a desk in the middle of the warehouse, and (2) she would be required to enter the cafeteria "when there is no shellfish exposure within the cafeteria" and "during those times when there is no shellfish exposure".

42. While Plaintiff's new "workspace" was away from the cafeteria, she was placed in the middle of warehouse where she was subject to constant foot traffic and afforded zero privacy to discuss private HR related matters with employees as she was required to do as part of her job duties. Defendant claimed that Plaintiff could still use her old office for private meetings. However, as Plaintiff previously expressed to them, the location of Plaintiff's office presented a serious hazard to her health.

43. Additionally, in regard to the so-called accommodations being made for Plaintiff, Plaintiff was not provided with any way to ensure she would not be exposed to shellfish and was told that it would be Plaintiff's job to monitor her surroundings to determine if shellfish was present.

44. Moreover, despite actively searching for HR employees to fill a remote position, Defendant Arrow Electronics, Inc. denied Plaintiff's request to work remotely while it considered a policy banning shellfish from the Reno location.

45. It was ultimately decided by Defendant Arrow Electronics, Inc. that it would not institute a shellfish ban at the warehouse despite Plaintiff's request.

46. On or about August 16, 2021, Plaintiff received additional emails regarding her performance from Stephanie Clark. Specifically, Stephanie Clark attempted to document Plaintiff as being a "no-show" to their Daily Connect meeting. However, Plaintiff had timely informed Stephanie Clark that the employee orientation she was conducting was running late, and she would need to take her required hour-long lunch later in the day. Plaintiff was especially careful to take her entire hour-long lunch as she had been reprimanded for taking a shorter lunch just the week before. Stephanie Clark then changed the time of the Daily Connect meeting as Plaintiff was taking her lunch, therefore Plaintiff was unaware of the start time.

47. In addition, Plaintiff responded to Stephanie Clark, reminding her that she herself had not attended a Daily Connect meeting the previous week and had not informed Plaintiff until an hour later and asked if the rules apply equally across the board. Plaintiff did not receive a response back.

48. On or about August 17, 2021, Plaintiff attended her Weekly Connect meeting with Stephanie Clark and Romy Kuklin. Missy Fuller, who was not normally present for these meetings, also attended the meeting.

49. During that meeting, Plaintiff was accused of telling an employee she had been "kicked out" of her office. Missy Fuller also accused Plaintiff of having negative body language (despite being in Colorado and having no firsthand knowledge of Plaintiff's demeanor at work). Missy told Plaintiff that the way she held herself was the reason the employees' believed Plaintiff was in trouble, not because Plaintiff had been moved out of her private office and placed in the middle of the warehouse floor.

50. Plaintiff informed Romy Kuklin and Missy Fuller that she had previously told Stephanie Clark about employees approaching her and asking if she had gotten into trouble since she had been moved to a desk in the middle of the warehouse floor, and that Plaintiff told those employees that she had been moved to be more accessible to them.

51. Plaintiff documented these events in an August 17, 2021, email to Linda Cherry, and informed Linda Cherry that she had been subjected to harassment shortly after she requested the ADA accommodations. Plaintiff also stated that the accommodations that were made for her did not adequately protect her from a potential exposure to shellfish.

52. Additionally, Plaintiff requested further guidance regarding Defendant Arrow Electronics, Inc.'s position that Plaintiff monitor the cafeteria to determine if shellfish was present, again explaining that she could not smell shellfish without likely suffering an allergic reaction.

53. Plaintiff also informed Linda Cherry in her email that she had started the process to file a complaint with the EEOC.

54. On or about August 19, 2021, Linda Cherry responded to Plaintiff's email. In her response, she misquoted Plaintiff's physician as stating Plaintiff needed to "reduce exposure to shellfish" and again informed Plaintiff that she would need to enter the cafeteria, stating "there is not shellfish present in the lunchroom at all times, so we request you assist employees with the kiosks located in the lunchroom when you are safely able to do so." Cherry ignored Plaintiff's request on how to determine the presence of shellfish without exposing herself to the shellfish.

55. On or about August 19, 2021, Plaintiff sent a follow-up email to Linda Cherry regarding the requirements to enter the cafeteria "when there is no shellfish exposure". Plaintiff reiterated her physician's statement that Plaintiff needed to be in an environment free from shellfish allergens versus just reducing her exposure as Linda Cherry wrongfully alleged in her responsive email. Plaintiff again informed Cherry of the peanut ban in one of Arrow's Colorado locations.

56. On or about August 20, 2021, after Plaintiff sent an email to Stephanie Clark memorializing a meeting they had with Romy Kuklin that day, Stephanie Clark responded to Plaintiff's email with extensive notes, appearing to document alleged deficiencies in Plaintiff's performance.

57. On or about August 23, 2021, Plaintiff responded to Stephanie Clark, outlining the issues she has had with getting clear direction regarding her job duties and expectations.

58. That same day, Plaintiff sent a separate follow-up email to Linda Cherry regarding her August 19, 2021 follow-up email as she had not yet received a response. Linda Cherry again failed to respond to Plaintiff.

59. As a result of Plaintiff not receiving a response to either her August 19, 2021 or August 23, 2021 follow-up emails, Plaintiff sent another follow-up email to Linda Cherry from her personal email address regarding the issues she raised in her initial August 19, 2021 email.

60. On or about October 11, 2021, almost a month after her August 19, 2021 follow-up email, Plaintiff finally received a response from Linda Cherry, which directed Plaintiff to her previous first August 19, 2021 email, reiterating that Plaintiff was required to enter the cafeteria "when it is safe to do so." However, Linda Cherry failed to provide Plaintiff any explanation and/or way to determine when it would be safe to enter the cafeteria without exposing herself to shellfish.

61. Additionally, Linda Cherry referenced Plaintiff's ability to "access the HR office and suite through a different door, not through the lunchroom, to minimize any possible shellfish exposure." However, Linda Cherry again ignored Plaintiff's physician's statement that exposure needed to be eliminated, not minimized or reduced as she had alleged.

62. Plaintiff sent a responsive that same day, wherein she discussed Linda Cherry's lack of response to Plaintiff's follow-up email on August 19, 2021, and again requested guidance on

how to determine if the cafeteria was safe since she could not even breathe air where shellfish was present without having an allergic reaction.

63. Despite knowing Plaintiff's physician's clear instructions that Plaintiff required a work environment free of shellfish, as well as Plaintiff's repeated explanations of the same, Linda Cherry responded to Plaintiff on or about October 13, 2021 telling plaintiff to "exercise [her] best judgment to assess whether there is shellfish present in the breakroom and stating that although Plaintiff had "expressed [her] preference that we ban shellfish from the facility" doing so "presents a significant burden for all of the other employees." Linda Cherry went on to explain that if Plaintiff plainly saw or smelled shellfish or someone told her they were eating it, she should not enter the cafeteria.

64. Plaintiff responded to Linda Cherry's email that same day and yet again explained that her smelling or being in the vicinity of shellfish was an exposure, which would likely result in a severe allergic reaction for Plaintiff. Plaintiff also noted she was being subjected to disciplinary actions due to her "reluctance" to enter the cafeteria and reiterated to Linda Cherry that the Colorado location had banned peanuts to accommodate a severe allergy for an employee previously. Linda Cherry did not respond to Plaintiff.

65. Because of her disability, Plaintiff ultimately was forced to resign roughly a week later on October 19, 2021 because no reasonable employee in Plaintiff's position could be expected to continue to subject themselves to such a toxic work environment. Arrow made Plaintiff's working conditions so intolerable that a reasonable person in her position would feel compelled to resign. This resignation amounted to a constructive discharge.

## FIRST CLAIM FOR RELIEF

**Disability Discrimination in Violation of the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA")**

66. Plaintiff incorporates and realleges Paragraphs 1 through 65 as though said paragraphs are fully set forth herein.

67. At all relevant times, Plaintiff was a "qualified individual" under the ADA as Plaintiff was an individual with a disability who, with a reasonable accommodation, could perform

the essential functions of her senior human resources associate position for Defendant.

68. At all relevant times, Defendant had adequate notice and was aware of Plaintiff's disability, which was covered under the ADA.

69. At all relevant times, Defendant was aware of Plaintiff's need and desire for reasonable accommodation regarding her disability.

70. Defendant failed, or refused, to accommodate Plaintiff's disability by, among other things, requiring her to expose herself her potentially life-threatening allergens by entering the cafeteria where shellfish could be present at any time. Defendant, a multibillion-dollar Fortune 500 company, had the resources to reasonably accommodate the Plaintiff but chose not to.

71. Defendant could have easily provided reasonable accommodations that would have enabled plaintiff to perform the essential functions of her job and would not have placed an undue hardship on the operation of Defendant's business by, among other things, (1) providing Plaintiff with an adequate office not adjacent to the cafeteria, (2) by not requiring Plaintiff to have to go into cafeteria to do her job, (3) by informing other employees who needed to talk Plaintiff that she had a severe shellfish allergy and would not be available to discuss any human resource or work related issues in the cafeteria, (4) banning shellfish from the cafeteria and warehouse similar to what Defendant had done for another employee who suffered a severe peanut allergy at one of its Colorado location, (5) allow Plaintiff to work remotely until it figured out a reasonable accommodation for Plaintiff to safely return to work, (6) posting signs at the HR kiosks in cafeteria directing employees to where they could contact or meet with Plaintiff if they needed assistance so Plaintiff could avoid the cafeteria, (7) posting signs alerting employees that shellfish was restricted due to a severe food allergy and (8) not punishing Plaintiff for taking time off due to an allergic reaction. Defendant chose not to provide these accommodations.

72. When Plaintiff attempted to engage in conduct protected by the ADA, Defendant subjected her to adverse employment actions. Defendant wrote Plaintiff several pretextual written warnings, relocated her out of an office to a desk in the middle of the warehouse, ignored her communications, refused to accommodate Plaintiff's disability, subjected her to actual and potential shellfish exposure which could cause a life-threatening reaction, and ultimately forced her to resign.

73. Defendant's actions toward Plaintiff as alleged above resulted in Plaintiff being treated less favorably than similarly situated, non-disabled, employees.

74. Defendant's conduct as set forth above constitutes a violation of the ADA inasmuch as Defendant failed to reasonably accommodate the Plaintiff's disability. Defendant is also liable under a disparate impact analysis because Defendant's policies, practices, rules that appear to be neutral resulted in a disproportionate impact on persons with a shellfish allergy. Moreover, Plaintiff was subjected to disparate treatment different from individuals without a shellfish allergy.

75. Defendant is directly liable to Plaintiff for the conduct of it and its employees and vicariously liable under the theory of *respondeat superior*.

76. Defendant is therefore liable for the discriminatory actions of the Plaintiff's supervisors.

77. As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff suffered monetary damages in the form back pay, front pay, lost benefits, allergic illness, and emotional distress.

78. Defendant's conduct was willful, intentional, oppressive, malicious, and done with a wanton and reckless disregard for Plaintiff's rights. Defendant also discriminated in the face of a perceived risk that its actions violated federal law. Therefore, the imposition of punitive damages against Defendant and in favor of the Plaintiff is appropriate at time of trial.

79. As a result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged thereby and is entitled to reasonable attorney's fees and costs.

### SECOND CLAIM FOR RELIEF

**Disability Discrimination in Violation of NRS § 613.310 *et seq*.**

80. Plaintiff incorporates and realleges Paragraphs 1 through 79 as though said paragraphs are fully set forth herein.

81. At all relevant times, Defendant was aware of Plaintiff's disability, which was covered by NRS § 613.310 *et. seq*.

82. At all relevant times, Defendant was aware of Plaintiff's need for reasonable accommodation regarding her disability.

83. Plaintiff was a qualified individual that was able to perform the essential duties of a senior human resources associate position for Defendant, with or without reasonable accommodations.

84. Defendant, as an employer doing business in Nevada, is subject to Nevada state statutes prohibiting discrimination (NRS § 613.310 *et. seq*.) and has a legal obligation to provide Plaintiff with a workplace free of unlawful discrimination.

85. Defendant could have easily provided reasonable accommodations that would have enabled plaintiff to perform the essential functions of her job and would not have placed an undue hardship on the operation of Defendant's business by, among other things, (1) providing Plaintiff with an adequate office not adjacent to the cafeteria, (2) by not requiring Plaintiff to have to go into cafeteria to do her job, (3) by informing other employees who needed to talk Plaintiff that she had a severe shellfish allergy and would not be available to discuss any human resource or work related issues in the cafeteria, (4) banning shellfish from the cafeteria and warehouse similar to what Defendant had done for another employee who suffered a severe peanut allergy at one of its Colorado location, (5) allow Plaintiff to work remotely until it figured out a reasonable accommodation for Plaintiff to safely return to work, (6) posting signs at the HR kiosks in cafeteria directing employees to where they could contact or meet with Plaintiff if they needed assistance so Plaintiff could avoid the cafeteria, (7) posting signs alerting employees that shellfish was restricted due to a severe food allergy and (8) not punishing Plaintiff for taking time off due to an allergic reaction. Defendant chose not to provide these accommodations.

86. When Plaintiff attempted to engage in conduct protected by NRS § 613.310 *et. seq*, Defendant subjected her to adverse employment actions. Defendant wrote Plaintiff several pretextual written warnings, relocated her out of an office to a desk in the middle of the warehouse, ignored her communications, refused to accommodate Plaintiff's disability, subjected her to actual and potential shellfish exposure which could cause a life-threatening reaction, and ultimately forced her to resign.

87. Defendant's actions toward Plaintiff as alleged above resulted in Plaintiff being treated less favorably than similarly situated, non-disabled, employees.

88. Defendant's conduct as set forth above constitutes a violation of NRS § 613.310 *et. seq.* because Defendant failed to reasonably accommodate the Plaintiff's disability. Defendant is also liable under a disparate impact analysis because Defendant's policies, practices, rules that appear to be neutral resulted in a disproportionate impact on persons with a shellfish allergy. Moreover, Plaintiff was subjected to disparate treatment different from individuals without a shellfish allergy.

89. Defendant is directly liable to Plaintiff for the conduct of it and its employees and vicariously liable under the theory of *respondeat superior*.

90. Defendant is therefore liable for Plaintiff's supervisors' discriminatory actions.

91. As a direct and proximate result of Defendant's conduct, Plaintiff suffered monetary damages in the form of past and future lost earnings.

92. Defendant's conduct was willful, intentional, oppressive, malicious, and done with a wanton and reckless disregard for the rights of Plaintiff, thereby warranting the imposition of punitive damages in an amount to be determined at trial.

. . . .

93. As a result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney and, as a direct and foreseeable result, has been damaged thereby and is entitled to reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment in favor of Plaintiff and against Defendant as follows:

1. Awarding damages pursuant to federal and state law;
2. Awarding compensatory damages;
3. Awarding punitive damages;
4. Awarding pre-judgment interest, at the highest rate allowable by law;
5. Awarding back and front pay;
6. Awarding reasonable attorneys' fees and costs of suit; and
7. Any such relief this Court deems necessary and proper.

DATED this 7th day of March, 2022.

RESPECTFULLY SUBMITTED,
**LAGOMARSINO LAW**
/s/ *Andre M. Lagomarsino*
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiff Shehaly Salgado-Rodriguez*

**JURY DEMAND**

PLEASE TAKE NOTICE that Plaintiff, by and through her undersigned attorneys, hereby demands a jury trial of all issues in the above-referenced matter.

DATED this 7th day of March, 2022.

RESPECTFULLY SUBMITTED,
**LAGOMARSINO LAW**
/s/ *Andre M. Lagomarsino*
ANDRE M. LAGOMARSINO, ESQ. (#6711)
CORY M. FORD, ESQ. (#15042)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
*Attorneys for Plaintiff Shehaly Salgado-Rodriguez*